1  ROSS A. SPECTOR, ESQ. (S.B. #135949)
   SPECTOR & BENNETT
2  A Professional Corporation
3  50 California Street, 15th Floor
   San Francisco, California 94111
4  Telephone: (415) 439-5390
   Telefax: (415) 707-2064
5

6  Attorneys for Plaintiff
   Smaato, Inc.
7

8                    UNITED STATES DISTRICT COURT

9                    NORTHEN DISTRICT OF CALIFORNIA

10

11 | SMAATO, INC.,                          Case No: 19-cv-05480-KAW

12 |        Plaintiff,                       **FIRST AMENDED COMPLAINT FOR
                                             BREACH OF CONTRACT, COMMON
13 | vs.                                     COUNT, OPEN BOOK ACCOUNT AND
                                             ACCOUNT STATED**
14
   SITO MOBILE, LTD., a Delaware
15 | corporation (dba DoubleVision Networks,
   Inc., a New York Corporation); SITO      ***DEMAND FOR JURY TRIAL***
16 | MOBILE SOLUTIONS, INC.; SITO
   MOBILE R&D IP, LLC; SITO MOBILE
17 | MEDIA, INC.; DOUBLEVISION
   NETWORKS, INC.,
18 |        Defendants.
19 | _____/

20

21

22

23
        Plaintiff SMAATO, INC. ("Smaato") alleges as against SITO MOBILE, LTD., a
24
   Delaware corporation (dba DoubleVision Networks, Inc., a New York Corporation) - "SML";
25
   SITO MOBILE SOLUTIONS, INC. ("SMS"); SITO MOBILE R&D IP, LLC ("SMR"); SITO
26
27 MOBILE MEDIA, INC. ("SMM"); and DOUBLEVISION NETWORKS, INC. ("DNI") as

28 follows:

**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT, et al.**                    1

**JURISDICTION AND VENUE**

1.     This court has jurisdiction of this action under 28 USC Section 1332 which provides for diversity jurisdiction between citizens of diverse states wherein the dispute involves more than $75,000.

2.     Venue is properly within this district pursuant to paragraph 12.2 of the Terms and Conditions which appear as Exhibit A to the Real-Time Bidding Service Agreement for Media Buyers entered into between Smaato and SML's predecessor-in-interest, DNI.  The Real-Time Bidding Service Agreement for Media Buyers shall hereinafter be referred to herein as "the Agreement".  A copy of the Agreement is attached hereto as Exhibit 1.  Said Terms and Conditions paragraph 12.2, in pertinent part, provides "The Parties agree to submit to the exclusive jurisdiction of the state and federal courts located in San Francisco County, California for any dispute related to or arising out of this Agreement, waiving all defenses related to jurisdiction, forum and venue".

**PARTIES**

3.     Smaato is a California corporation with its principal place of business in San Francisco, California.

4.     Smaato is informed and believes and thereupon alleges that SITO MOBILE, LTD., a Delaware corporation (dba DoubleVision Networks, Inc., a New York Corporation) is a Delaware corporation with its principal place of business located in Jersey City, New Jersey.

4a.     Smaato is informed and believes and thereupon alleges that SITO MOBILE SOLUTIONS, INC. is a Nevada corporation with its principal place of business located in Jersey City, New Jersey.

4b.     Smaato is informed and believes and thereupon alleges that SITO MOBILE R&D IP, LLC is a Delaware limited liability company with its principal place of business located in Jersey City, New Jersey.

4c.     Smaato is informed and believes and thereupon alleges that SITO MOBILE MEDIA, INC. is a Nevada corporation with its principal place of business located in Jersey City, New Jersey.

4d.     Smaato is informed and believes and thereupon alleges that DOUBLEVISION NETWORKS, INC. is a Nevada corporation with its principal place of business located in Jersey City, New Jersey.

4e.     SML, SMS, SMR, SMM, and DNI shall hereinafter be collectively referred to as "SITO".

4f.     Smaato is informed and believes that defendants SML, SMS, SMR, SMM, and DNI are, and at all times herein mentioned were, alter-egos, successors, predecessors, agents, and representatives of each other, and were at all times herein mentioned, acting within the scope, purpose and authority of such alter-ego, successor, predecessor, agency, and representation, and with the permission, knowledge, and consent of each other.  Notwithstanding the foregoing, Smaato is informed and believes that said five defendants share business and office equipment, office locations, telephone numbers, intellectual property, websites, management, employees and ownership; fail to follow required corporate formalities and maintain overlapping corporate records.

Smaato is further informed and believes that defendants SML, SMS, SMR, SMM, and DNI control the business operations of each other, have commingled business and corporate funds, have diverted corporate and business funds for non-corporate and non-business use, have treated corporate and business assets as each others', and have diverted and shifted corporate and

business assets to each other to the detriment of their respective creditors and without sufficient consideration.

Smaato is further informed and believe that defendants SML, SMS, SMR, SMM, and DNI run their business operations as a single enterprise, file consolidated financial statements with the United States Securities and Exchange Commission, are each under capitalized, and are each likely insolvent and subject to the commencement of liquidation proceedings by their creditors.

Smaato is further informed and believe that SML, SMS, SMR, SMM, and DNI have engaged in the transfer of assets between each other without receiving equal value in return, in violation of California Civil Code sections 3439.04 and 3429.05.

For the foregoing reasons, and as defendants SML, SMS, SMR, SMM, and DNI are alter egos of each other, maintain a unity of interest and ownership, and engage in woefully insufficient corporate separateness, it would sanction a fraud and/or promote injustice to allow them to avoid paying their creditors by engaging in the above-referenced conduct and tactics.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

5.      Smaato realleges and incorporates herein by this reference as though more fully set forth the allegations contained in paragraphs 1-4.

6.      On or about March 1, 2014, SML's predecessor-in-interest, DNI, and Smaato executed the Agreement, wherein DNI promised to pay Smaato certain sums, the principal balance of which is presently $798,784.75.  On or about September 8, 2016, SML and Smaato executed an Amendment to Real-Time Bidding Service Agreement for Media Buyers, a

copy of which is attached hereto as Exhibit 2.  On or about January 4, 2019, SML and Smaato executed a Rebate Agreement, a copy of which is attached hereto as Exhibit 3.

7.   On or about April 1, 2019 SITO breached the Agreement in the first instance by failing to remit the required payment.  SITO subsequently breached the Agreement four more times, on April 29, 2019, May 30, 2019, June 29, 2019 and July 30, 2019, by failing to remit the required payments.

8.   There is now due, owing and unpaid the principal sum of $798,784.75 under the Agreement, with interest accruing at the rate of 18% per annum as provided for in paragraph 5.1 of the Terms and Conditions of the Agreement.

9.   Smaato has performed all conditions, covenants and promises required to be performed by it in accordance with the terms and conditions of the Agreement.

WHEREFORE, Smaato prays for judgment against Defendant as hereinafter set forth.

### SECOND CLAIM FOR RELIEF
**(Common Count)**

10.   Smaato realleges and incorporates herein by this reference as though more fully set forth the allegations contained in paragraphs 1-9.

11.   Within the four years before the commencement of this action SITO became indebted to Smaato in the sum of $798,784.75 with respect to the aforementioned Agreement.  No part of said sum has been paid.

WHEREFORE, Smaato prays for judgment against Defendant as hereinafter set forth.

### THIRD CLAIM FOR RELIEF
**(Open Book Account)**

12.   Smaato realleges and incorporates herein by this reference as though more fully set forth the allegations contained in paragraphs 1-11.

13.   Smaato and SITO have engaged in financial transactions.

14.     Smaato kept an account of the debits and credits involved in the transactions.  A copy of the account is attached hereto as the first page of Exhibit 4, hereinafter the "Statement".

15.     SITO owes Smaato money on the account.

16.     SITO owes Smaato the principal sum of $798,784.75, plus interest from and after April 1, 2019 at the rate of 18% per annum.

WHEREFORE, Smaato prays for judgment against Defendant as hereinafter set forth.

### FOURTH CLAIM FOR RELIEF
**(Account Stated)**

17.     Smaato realleges and incorporates herein by this reference as though more fully set forth the allegations contained in paragraphs 1-16.

18.     SITO owes Smaato money from previous financial transactions.

19.     Smaato and SITO agreed that the amount delineated in the Statement was the correct amount owed by SITO to Smaato.

20.     SITO promised to pay the stated amount to Smaato.

21.     SITO has not paid Smaato the amounts owed under this account.

22.     SITO owes Smaato the principal sum of $798,784.75, plus interest from and after April 1, 2019 at the rate of 18% per annum.

WHEREFORE, Smaato prays for judgment against Defendant as hereinafter set forth.

WHEREFORE, Smaato prays for judgment against Defendant as follows:

A.      On the First Claim For Relief:

1.      For damages in the sum of $798,784.75;

2.      For interest thereon from and after April 1, 2019 at the rate of 18% per annum;

3.      For attorney's fees and costs of suit in this action; and

4.      For such other and further relief as the Court may deem just and proper.

B.      <u>On the Second Claim For Relief</u>:

1.      For damages in the sum of $798,784.75;

2.      For interest thereon from and after April 1, 2019 at the rate of 18% per annum;

3.      For costs of suit in this action; and

4.      For such other and further relief as the court may deem just and proper.

C.      <u>On the Third Claim For Relief</u>:

1.      For damages in the sum of $798,784.75;

2.      For interest thereon from and after April 1, 2019 at the rate of 18% per annum;

3.      For attorney's fees and costs of suit in this action; and

4.      For such other and further relief as the court may deem just and proper.

//

//

//

//

//

D.      <u>On the Fourth Claim For Relief</u>:

           1.      For damages in the sum of $798,784.75;

           2.      For interest thereon from and after April 1, 2019 at the rate of 18% per annum;

           3.      For costs of suit in this action; and

           4.      For such other and further relief as the court may deem just and proper.

DATED: October 17, 2019                     SPECTOR & BENNETT
                                        A Professional Corporation

                                        /s/ Ross A. Spector

                                        _____
                                        Ross A. Spector, Esq.
                                        Attorneys for Plaintiff Smaato, Inc.

## JURY DEMAND

Plaintiff Smaato, Inc. demands a trial by jury pursuant to F.R.C.P. 38.

DATED: October 17, 2019                     SPECTOR & BENNETT
                                         A Professional Corporation

                                        /s/ Ross A. Spector

                                        _____
                                        Ross A. Spector, Esq.
                                        Attorneys for Plaintiff Smaato, Inc.

# EXHIBIT 1



# REAL-TIME BIDDING SERVICE AGREEMENT FOR MEDIA BUYERS

This Real-Time Bidding Service Agreement for Media Buyers (the "**Agreement**") is dated as of March 1st, 2014 ("**Effective Date**") by and between Smaato, Inc., with offices located at 240 Stockton St., 10ᵗʰ Floor, San Francisco, CA 94108, United States ("**SMAATO**") and the entity set forth below ("**Company**"), and shall govern SMAATO's provision of the SMAATO Services as defined hereunder. This Agreement consists of the principal terms set forth below (the "**Principal Terms**"), the Terms and Conditions set forth on Exhibit A attached hereto and incorporated herein by reference ("**Terms and Conditions**") and all other Exhibits and Schedules referenced herein and therein, all of which together constitute the complete agreement between the parties hereto with respect to the subject matter hereof, superseding and replacing all prior or contemporaneous understandings or agreements, written or oral, regarding such subject matter and any terms of service or other agreement for Company's Advertisements which appear on SMAATO's website(s) (as applicable).

## PRINCIPAL TERMS

In consideration of the mutual covenants contained herein, the parties agree as follows:

| A. Company Information | Full Legal Name: **DoubleVision Networks, Inc.** |
|---|---|
| | Address: 286 Madison Ave, Suite 1301<br>New York, NY 10017 |
| | Main Contact: Jon Lowen<br>Phone: 646-350-4653<br>Email address: jon@doublevis.com<br>Facsimile: 310-496-0474 |
| **B. Term** | The initial term of this Agreement will commence on the Effective Date and will continue for an initial period of one (1) year ("**Initial Term**"). Following the Initial Term, this Agreement will automatically renew for successive twelve (12) month periods (each, a "**Renewal Term**", and together with the Initial Term, the "**Term**"), unless either party gives the other party at least sixty (60) days advance written notice of termination before the end of the Initial Term or then-current Renewal Term. |
| **C. Termination** | 1. Termination for Convenience. Either party may terminate this Agreement, at any time, with or without cause, upon giving at least sixty (60) days' prior written notice to the other party. |
| | 2. Termination for Breach. Notwithstanding the foregoing, this Agreement may be terminated immediately by either party upon a material breach by the other party; provided, however that if the breach is curable, the other party may only terminate this Agreement if the party in breach fails to cure such breach within thirty (30) days from receipt of written notice from the other party. Notwithstanding the above, either party has the right to terminate this Agreement immediately by written notice if: |
| | (a) the other party ceases or threatens in writing to cease to carry on its business; |
| | (b) the other party is the subject of a bankruptcy order or becomes insolvent or makes any arrangement or composition with or assignment for the benefit of its creditors or if any of the other party's assets are the subject of any form of seizure, or the other party goes into liquidation either voluntary (otherwise than for reconstruction or amalgamation) or compulsory that is not dismissed within ninety (90) days, or a receiver or administrator is appointed over the other's assets. |

| D. Fees | During the Term and subject to the terms and conditions hereof, Company agrees to pay SMAATO for the SMAATO Services the Total Media Costs (as defined in the Terms and Conditions). |
|---|---|
| E. Payment; Invoicing Terms | After the end of each calendar month, SMAATO will send an invoice for the Total Media Costs via email to Company. Payment is due within thirty (30) calendar days from the end of the month for which the invoice is issued ("**Due Date**"). Any dispute concerning the amount of any invoice must be raised within thirty (30) days of the end of the month for which the amounts were accrued. Payment shall exclusively be denominated in U.S. Dollars and paid via Paypal or wire transfer to an account to be designated by SMAATO or by other means as communicated by SMAATO. The payment information is to be found in Schedule 2 of this Agreement. Closing Prices will be rounded to the nearest cent. Fees will be calculated solely based on records maintained by Smaato. |
| F. Exclusivity | Under no circumstances shall this Agreement be construed, interpreted or enforce any exclusivity between the Parties. |

IN WITNESS WHEREOF, the undersigned parties have caused this Agreement to be executed by their duly authorized signatories effective as of the Effective Date.

| Smaato, Inc. | Company: DoubleVision Networks, Inc. |
|---|---|
| Signature: | Signature: |
| Name: SIMON BELL | Name: Jon Lowen |
| Title: GM, GLOBAL DEMAND | Title: Director of Operations |

# EXHIBIT A
## REAL-TIME BIDDING SERVICE AGREEMENT FOR MEDIA BUYERS
### TERMS AND CONDITIONS

These Terms and Conditions (the "**Terms**", and together with the Principal Terms attached hereto, the "**Agreement**") are entered into between Smaato, Inc. ("**SMAATO**") and Company (as defined in the Principal Terms attached hereto) and set forth the rights and obligations of SMAATO and Company. Each of SMAATO and Company may be referred to herein individually as a "**Party**" or collectively as the "**Parties**".

### 1.   AGREEMENT BACKGROUND

SMAATO and Company may from time to time agree that Company may deliver Ads to Ad Inventory located on Publisher Sites of SMAATO. SMAATO will make the SMAATO Services available pursuant to the terms of this Agreement and may facilitate such actions or transactions to enable Publishers and SMAATO to receive payments for Ads delivery on Publisher Sites.

### 2.   DEFINITIONS

"**Ad Inventory**" means the advertising space on Publisher Sites that SMAATO and Publishers make available through the RTB Technology for Advertisers to place and display Ads.

"**Advertisement**" or "**Ad**" means an advertisement represented by text, graphics, audio or video, or by rich media such as movement, animation, flash or other promotional activity provided by Advertisers.

"**Advertiser**" means any entity (including direct advertisers, agencies, ad networks, ad servers) that has contracted with Company to purchase, or to have Company purchase on its behalf, Ad Inventory for the purpose of displaying Ads.

"**Bid Request**" means the HTML encoded text sent from SMAATO to Company offering a single impression of Ad Inventory for purchase in real-time.

"**Closing Price**" means, with respect to a particular auction, the total price included in the win notice sent by SMAATO to Company; provided however, that the Closing Price will not be higher than the Company Bid. The Data Service Fees (to the extent agreed by the Parties in advance) and the Special Inventory Fees (to the extent agreed by the Parties in advance) will not be included in any Closing Price, unless Company has separately agreed in advance.

"**Company Bid**" means the price offered by Company for a particular impression in the RTB auction, in response to a Bid Request.

"**Content Guidelines**" means the Ads content guidelines attached hereto as Schedule 1.

"**Data Service Fees**" will be defined in subsequent versions of the SMAATO Tech Specs but,

as an illustration, would be expected to include per impression fees for usage of audience, contextual, brand safety or other data services provided through the RTB Technology to Company.

"**End-User**" means any visitor to, or user of, any Publisher Site accessed through a Mobile Device.

"**Floor Price**" means the minimum price for the placement of an Ad on a particular Ad Inventory as determined by a specific Publisher or by SMAATO based on various historical performance or similar proprietary methods used by SMAATO.

"**Mobile Device**" means wireless mobile devices such as telephones, personal digital assistants, tablets and other wireless devices from which End-Users access Ad Inventory.

"**Publisher**" means an entity or an individual that owns or makes available mobile website(s) or mobile application(s) for the purposes of offering for sale the Ad Inventory.

"**Publisher Site(s)**" means the mobile websites, applications, portals, games, devices owned by SMAATO or managed by SMAATO on behalf of Publishers, and where the Ad Inventory is located.

"**RTB Technology**" means SMAATO's proprietary real-time trading platform that enables media buyers, such as Company, to bid real-time for the purchase of ad inventory on Publisher Sites.

"**SMAATO Services**" means the Ad Inventory, the Publisher Sites and the RTB Technology as defined herein and described under Section 3 below.

"**Special Inventory Fees**" means fees (which will be defined in subsequent versions of the SMAATO Tech Specs) that would be applied for access to inventory that is not commonly included through the RTB Technology. Such inventory could include "first look" bidding services or premium inventory offered through a private marketplace set-up.

"**Tech Specs**" of "**Technical Specifications**" means a full range of parameters describing the technical specifications of the RTB Technology.

"**Timeframe**" means the average period of time set by SMAATO and communicated in the Tech

Specs within which the Company Bid must be sent in response to a Bid Request.

"**Total Media Costs**" means, with respect to a particular month, the aggregate of all of the Closing Prices.

### 3. SMAATO SERVICES

3.1. SMAATO Services. The SMAATO Service performs an auction with the available bids for each and every impression (request by a Smaato Publisher's Site to display Ads). The proprietary RTB Technology creates a bid-based auction for Company to buy Ad Inventory on various Publisher Sites. SMAATO will send a Bid Request to the Company Service for a bid. In order for Company's bid response (if any) to be considered in the auction, the Company Service will reply within the Timeframe with a bid that fulfills all requirements set out by SMAATO in the Bid Request.

3.2. RTB Technology. The RTB Technology has the following characteristics: (a) SMAATO and/or Publisher reserves the right to block and/or suspend a particular Advertiser at any time; (b) SMAATO shall have no obligation to deliver a specific number of Bid Requests to Company; (c) SMAATO reserves the right to change any of the auction rules by providing Company prompt written notice sent via email; (d) SMAATO and/or Publisher reserves the right to set up Floor Prices under which Company's Bids will not be accepted.

3.3. Updates. SMAATO reserves the right to make any updates to the RTB Technology ("Updates"), provided that in the event such Updates are mandatory to Company to further continue using the SMAATO Services, Company shall promptly incorporate and utilize the Updates or otherwise will not be able to access the SMAATO Services.

### 4. ACCESS TO SERVICES

4.1. Access to SMAATO Services. Subject to the terms and conditions of this Agreement, SMAATO grants Company during the Term a revocable, limited, non-exclusive, non-transferable, non-sub licensable license to access and use the SMAATO Services for the purpose of purchasing Ad Inventory, in accordance with the policies and requirements specified by SMAATO from time to time. Except as expressly provided herein, Company shall not license, sublicense, sell, resell, lease, transfer, reverse engineer, decompile, disassemble, assign, distribute or otherwise exploit or make available the SMAATO Services to any third party, without the prior written approval of SMAATO, except to the extent that such restrictions are expressly prohibited by applicable law. Any attempt to sublicense, resell, transfer or assign shall be void and shall result in termination of this Agreement and be subject to reasonable compensation and liquidated damages at the sole discretion of SMAATO. The SMAATO Services shall be

accessed only by authorized persons and individuals of Company.

4.2. SMAATO Ownership. As between SMAATO and Company, SMAATO owns all right, title and interest in all software, databases, and any data or information shared with Company, including but not limited to Publisher Sites or other aspects related to the SMAATO Service, any enhancements thereto and any material provided to Company by SMAATO through the SMAATO Service or otherwise, including but not limited to information regarding Publisher Sites, SMAATO Confidential Information, End-User Data, and SMAATO trademarks, copyrights, and logos, as such may be modified, upgraded and or enhanced from time to time for the purposes of providing the Services.

4.3. Contractual Relationship. To Company's Advertisers, SMAATO remains a third party, provided that no contractual relationship is established between SMAATO and the Advertisers. Company shall remain to SMAATO the sole primary contact for supporting SMAATO's requests and services in connection with Company's Advertisers. Further, all payments due to SMAATO are due regardless of whether Company has collected payment from Advertisers or agents of those Advertisers.

4.4. Right to Reject Ads. Company acknowledges that SMAATO is entitled to reject Ads in the event SMAATO reasonably believes that such Advertisements do not comply with the Content Guidelines and generally are likely to bring a claim about which SMAATO may be contractually obliged to indemnify a Publisher.

### 5. GENERAL PROVISIONS REGARDING FEES

5.1. General. If Company fails to pay the fees invoiced to Company within the Due Date, SMAATO shall reserve the right, in addition to its other remedies, to suspend Company's participation in the SMAATO Services until Company pays all overdue payments. To all past due amounts SMAATO may charge interest which will equal to the lesser of (a) one and one-half percent per month or (b) the maximum rate allowed by law.

5.2 Taxes. All amounts payable hereunder are exclusive of any value added tax (VAT), use or sales taxes or similar taxes. Except for taxes on SMAATO's income, Company agrees to pay all applicable taxes or charges imposed by any government entity in connection with Company's use of the SMAATO Services.

### 6. PRIVACY AND USER DATA

6.1. Data Privacy. Each Party agrees to comply with all relevant and applicable privacy policies, laws and regulations as they may change from time to time ("Relevant Privacy Regulations"). Each Party agrees to post on its respective website its

privacy policies, which shall comply with the Relevant Privacy Regulations.

6.2. Use and collection of Data. The Parties agree that certain End-User Data as well as Site Data may be generated in connection with the SMAATO Services. For the purposes of this Agreement:

(a) "End-User Data" means any individual element of information of an identified or identifiable End-User (including but not limited to name, email address, IP address, UDID or other such unique identifiers, various demographics, location or similar End-User Information and any other information disclosed by or otherwise collected from an End-User and combined with any of the foregoing identifiers);

(b) "Site Data" means such data including but not limited to Publisher Sites, publisher click-stream, publisher type, brand and content, statistic data regarding number of impressions, Ads, clicks and similar performance related data.

(c) "Data" means End-User Data and Site Data.

6.3. Collection, Storage and Use of Data and Confidentiality Obligation. Under the terms of this Agreement, any Data shall be treated as Confidential Information of SMAATO, and Company is allowed neither to store nor to use any of such Data except for the purposes of performing its obligations under this Agreement. Further, Company understands that any Data received by Company from SMAATO in connection with the use of the SMAATO Services shall be exclusively limited to the use solely as agreed and permitted herein and exclusively for the purposes of this Agreement.

Company shall refrain from using the Data for the purposes of creating divisions or segments regarding End-User profiles and/or End-User targeted segments. Further, Company's collection, use and disclosure of End-User Data in connection with or resulting from its use of the SMAATO Services must strictly comply with the Children's Online Privacy Protection Act ("COPPA").

Company is prohibited to store any Site Data and/or End-User Data from any non-winning bid. The non-winning Company shall remove all and any Data received from SMAATO through the RTB Technology.

6.4. Transfer and Ownership of Bid Data. Company understands that under no circumstance it is allowed to transfer, share, sell or assign to or with any third parties any of the Data or use the Data to create various derivatives. Further, it is agreed and understood between the Parties that SMAATO, to the extent permitted by law, owns and retains all the rights on the Data.

6.5. Auditing. SMAATO reserves the right, no more than once in any twelve (12) month period, with reasonable prior notice (of not less than thirty (30) days), at SMAATO's expense, under reasonable time, place and manner conditions audit Company's log files or other directly relevant records, for the purpose of verifying Company's compliance with the storage and other restrictions related to Bid Data as set forth in this Agreement. SMAATO shall treat all such records and log files as Confidential Information of Company.

## 7. CONFIDENTIALITY

7.1. Confidential Information. As used herein, "**Confidential Information**" means any non-public information, regardless of whether it is in tangible form, disclosed by one Party (the "**Disclosing Party**") to the other Party (the "**Receiving Party**") in connection with this Agreement and which is identified or marked as "confidential" or "proprietary" or which, given the nature of the information or the circumstances surrounding its disclosure, should reasonably be understood to be confidential or proprietary. Smaato Confidential Information includes, without limitation, the terms of this Agreement and any non-public information relating to the RTB Service. Except as otherwise expressly permitted under this Agreement, the Receiving Party will not disclose any Confidential Information to third parties.

7.2. Information shall not be deemed Confidential Information if the Receiving Party can show by competent evidence that such information: (a) was known to the Receiving Party prior to receipt from the Disclosing Party directly or indirectly from a source other than one having an obligation of confidentiality to the Disclosing Party; (b) became known (independently of disclosure by the Disclosing Party) to the Receiving Party directly or indirectly from a source other than one having an obligation of confidentiality to the Disclosing Party; (c) became publicly known or otherwise ceases to be secret or confidential, except through a breach of this Agreement by the Receiving Party; or (d) was independently developed by the Receiving Party without use of or reference to the Confidential Information.

7.3. Each Party shall use reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use or reproduction of the other Party's Confidential Information during the Term and a period of three (3) years following the termination of this Agreement. Confidential Information may be disclosed only to: (a) employees and agents of the Parties that have a need to know such information in the course of their duties (and with respect to agents, who are under a contractual duty to protect the Disclosing Party's Confidential Information in a manner consistent with the obligations imposed by this Section 7); (b) legal or

financial advisors or potential acquirers of each of the Parties on a need to know basis (provided that such advisors and/or acquirers are under a contractual or professional duty to protect the Disclosing Party's Confidential Information in a manner consistent with the obligations imposed by this Section 7); (c) the applicable Publisher and/or Advertiser (provided that such Publisher and/or Advertiser are under a contractual or professional duty to protect the Disclosing Party's Confidential Information in a manner consistent with the obligations imposed by this Section 7); or (d) if required by law or valid order of a court or other governmental authority (provided that the Receiving Party delivers reasonable prior written notice to the Disclosing Party (if legally permissible) and uses commercially reasonable efforts to cooperate with the Disclosing Party's attempt to obtain a protective order). Upon written request of the Disclosing Party, the Receiving Party agrees to promptly return to the Disclosing Party or destroy all Confidential Information that is in the possession of the Receiving Party.

**8. REPRESENTATIONS AND WARRANTIES**

8.1. Mutual Representations and Warranties. Each Party hereto represents and warrants to the other Party that: (a) such Party has the full right, power and authority to enter into this Agreement on behalf of itself and to undertake to perform the acts required of it hereunder; (b) the execution of this Agreement by such Party, and the performance by such Party of its binding obligations and duties to the extent set forth hereunder, do not and will not violate any agreement to which it is a party or by which it is otherwise bound; (c) when executed and delivered by such Party, this Agreement will constitute the legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its representations, warranties, terms and conditions and (d) such Party shall conduct its business and perform hereunder in compliance with all applicable laws, rules and regulations.

8.2. Company's Representations and Warranties. Company represents and warrants that:

(a) the Advertisements do not contradict with the Content Guidelines or otherwise with additional guidelines that SMAATO's Publishers may from time to time request, provided that Company will be given such guidelines in advance;

(b) the Advertisements do not violate or infringe the intellectual property rights of any third party and do not promote any activity that is prohibited under the Content Guidelines;

(c) it will pay SMAATO the due payments under the terms of this Agreement regardless of whether Company has collected payment from Advertisers or agents of those Advertisers.

8.3. Representations and Warranties regarding Children's Sites.

(a) SMAATO contractually requires that Publishers making the Ad Inventory available through the SMAATO Services identify whether any of their Publisher Sites: (i) is directed to End-Users under 13 years old; or (ii) collects information from End-Users under 13 years old (in each case, a **"Children's Site"**). In this regard, SMAATO uses flags to identify any such Publishers as Children's Sites.

(b) Company represents and warrants that with respect to any Publishers that SMAATO flags as Children's Sites, Company will not use the SMAATO Services, and will not allow use of the SMAATO Services in connection with any activity that may violate COPPA, including without limitation: (i) placing behaviorally targeted ads; (ii) creating profiles of Children's Sites End-Users; or (iii) collecting personal information (as defined in COPPA) from End-Users of Children's Sites.

(c) Subject to the indemnification Section 10.1 below, SMAATO will not be responsible or liable for any failure by a Publisher to properly categorize whether or not any particular Publisher Site is a Children's Site.

8.3. SMAATO's Representations and Warranties. SMAATO represents and warrants that:

(a) it is the sole owner of the SMAATO Service and has secured all necessary licenses, consents and authorizations for operation of the SMAATO Service;

(b) it is in compliance with the applicable laws and regulations related to this Agreement.

**9. DISCLAIMER**

9.1 Disclaimer of Warranty. EXCEPT AS EXPRESSLY SET FORTH IN SECTION 8, NEITHER PARTY MAKES ANY REPRESENTATIONS OR WARRANTIES, EXPRESSED OR IMPLIED, REGARDING ITS PRODUCTS, SERVICES OR INFORMATION THEREON OR OTHERWISE RELATING TO THIS AGREEMENT AND/OR THESE TERMS AND CONDITIONS, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND IMPLIED WARRANTIES ARISING FROM COURSE OF DEALING OR COURSE OF PERFORMANCE. EXCEPT AS OTHERWISE SET FORTH HEREIN, SMAATO DOES NOT WARRANT THAT ITS PRODUCTS, SERVICES OR INFORMATION SHALL OPERATE UNINTERRUPTED OR ERROR-FREE.

9.2. ALTHOUGH SMAATO REPRESENTS AND WARRANTS THAT IT WILL USE COMMERCIALLY

REASONABLE EFFORTS TO: (A) ENSURE NO AD IS PLACED ON A PUBLISHER SITE THAT VIOLATES THE CONTENT GUIDELINES, AND (B) OBTAIN CONTRACTUAL REPRESENTATIONS FROM PUBLISHERS THAT THEIR RESPECTIVE PUBLISHER SITES WILL NOT VIOLATE SUCH CONTENT GUIDELINES, SMAATO DOES NOT GUARANTEE AND THEREFORE SHALL NOT BE HELD LIABLE WHETHER THE CONTENT OF THE PUBLISHER SITES MEET SUCH CONTENT GUIDELINES AND COMPANY UNDERSTANDS THAT SMAATO DOES NOT PRODUCE CONTENT BUT RATHER FACILITATES TRANSACTIONS BETWEEN PUBLISHERS AND ADVERTISERS. SMAATO HAS NO RESPONSIBILITY TO REGULARLY REVIEW THE PUBLISHER SITES OR CONTENT PROVIDED BY ITS PUBLISHERS.

9.3. No Guaranty. Neither Party guarantees that any particular volume of campaigns, Bid Requests or impressions shall be sold or purchased or made available for sale or purchase hereunder.

## 10. INDEMNIFICATION

10.1. By SMAATO. SMAATO shall defend, or settle any claim, demand, suit or proceeding ("**Claim**") brought against Company by any third party arising out of a breach of any representation or warranty provided by SMAATO under this Agreement. In addition to any Ad Inventory made available on Publisher Sites, if and to the extent that SMAATO is indemnified by the Publisher with respect to the Content Guidelines or any such similar content ("**Indemnified Inventory**"), SMAATO will pass through such indemnity to Company for third party Claims brought against Company alleging that the Indemnified Inventory does not comply with the Content Guidelines.

10.2. By Company. Company shall defend, indemnify and hold SMAATO and its affiliates, and its respective directors, officers, employees, agents and representatives harmless from and against any and all liabilities, expenses (including reasonable attorneys' fees), losses and damages relating to any third party claim arising out of: (a) a breach of Section 6 or of any representation or warranty provided by Company under this Agreement; (b) a claim that the Company Service or an Ad served on any Publisher Site infringes or misappropriates any third party intellectual property right; (c) a claim that an Ad is libelous or defamatory or otherwise violates the rights of any third party; or (d) or arising out of a violation of COPPA by Company with respect to Publisher Sites flagged as Children's Sites.

10.3. Indemnification Procedures. The obligations of each Party (the "Indemnitor") under this Agreement to defend, indemnify and hold harmless the other Party and its respective directors, officers, employees, agents and representatives (each an "Indemnitee") shall be subject to the following: (a) the Indemnitee shall provide the Indemnitor with prompt notice of the claim giving rise to such

obligation; provided, however, that any failure or delay in giving such notice shall only relieve the Indemnitor of its obligation to defend, indemnify and hold the Indemnitee harmless to the extent it reasonably demonstrates that its defense or settlement of the claim or suit was adversely affected thereby; (b) the Indemnitor shall have sole control of the defense and of all negotiations for settlement of such claim or suit; provided, however, that the Indemnitor shall not settle any claim unless such settlement completely and forever releases the Indemnitee from all liability with respect to such claim or unless the Indemnitee consents to such settlement in writing (which consent shall not be unreasonably withheld); and (c) the Indemnitee shall cooperate with the Indemnitor in the defense or settlement of any such claim or suit; provided, however, that the Indemnitee shall be reimbursed for all reasonable out-of-pocket expenses incurred in providing any cooperation requested by the Indemnitor. Subject to clause (b) above, the Indemnitee may participate in the defense of any claim or suit in which the Indemnitee is involved at its own expense.

## 11. LIMITATION OF LIABILITY

EXCEPT WITH RESPECT TO CONFIDENTIALITY OBLIGATIONS UNDER SECTION 7, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY WHETHER IN TORT (INCLUDING FOR NEGLIGENCE), CONTRACT MISREPRESENTATIONS OR OTHERWISE FOR ANY LOSS OF PROFIT, LOSS OF BUSINESS, LOSS OF INCOME, LOSS OF CUSTOMERS OR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR EXEMPLARY DAMAGES (EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES), ARISING FROM ANY ASPECT OF THE RELATIONSHIP PROVIDED HEREIN. EACH PARTY'S TOTAL AGGREGATE LIABILITY IN CONTRACT; TORT INCLUDING NEGLIGENCE; MISREPRESENTATION OR OTHERWISE ARISING IN CONNECTION WITH THE PERFORMANCE OR OBLIGATION OF THIS AGREEMENT SHALL BE LIMITED TO THE REVENUE ACTUALLY RETAINED BY SMAATO UNDER THIS AGREMENT IN THE LAST SIX (6) MONTHS PRECEDING THE DATE ON WHICH THE CLAIM AROSE; EVEN IF SUCH LOSSES RESULT FROM THE PARTY'S DELIBERATE PERSONAL REPUDIATORY BREACH OF THIS AGREEMENT.

## 12. MISCELLANEOUS

12.1. Modification. Any waiver, amendment or other modification of any provision of this Agreement shall be effective only if in writing and signed by both Parties.

12.2. Governing Law and Jurisdiction. This Agreement and the relationship between SMAATO and Company shall be governed by, and construed in accordance with, the laws of the State of California without regard to conflicts of laws principles. The Parties agree to submit to the exclusive jurisdiction of

the state and federal courts located in San Francisco County, California, for any dispute related to or arising out of this Agreement, waiving all defenses related to jurisdiction, forum and venue.

12.3. Severability and Waiver. If any provision of this Agreement shall be held or made invalid or unenforceable by a court decision, statute, rule or otherwise, the remaining provisions of this Agreement shall not be affected thereby and shall continue in full force and effect. Any waiver (express or implied) or delay by either Party of any default or breach of this Agreement shall not constitute a waiver of any other or subsequent default or breach.

12.4 Survival. Sections B, C, D and E of the Principal Terms and Sections 2 ("Definitions"), 5 ("General Provisions regarding Fees"), 6 ("Privacy and User Data"), 7 ("Confidentiality"), 8 ("Representations and Warranties"), 9 ("Disclaimer"), 10 ("Indemnification"), 11 ("Limitation of Liability") and 12 ("Miscellaneous") of these Terms will survive the expiration or termination of this Agreement.

12.5. Force Majeure. Neither Party shall be liable for delay or default in the performance of its obligations under this Agreement if such delay, stoppage or default is caused by conditions beyond its reasonable control which prevents or substantially limits performance, including but not limited to, fire, flood, accident, earthquakes, telecommunications line failures, electrical outages, acts of God, or labor disputes. If a Party claims occurrence of the Force Majeure event, it will promptly notify the other Party of such in writing giving the reasons for, and the expected period of any delay or stoppage of the other Party's performance. Either Party may, if the delay or default or stoppage caused by the Force Majeure event continues for more than thirty (30) continuous days, terminate this Agreement with immediate effect by giving written notice to the other Party and both Parties will be discharged from any future liability to perform and neither Party will be liable to the other Party for such termination or the consequences thereof.

12.6. Notices. All notices, requests, approvals, demands and other communications hereunder must be in writing and shall be deemed given: (a) if delivered personally, upon receipt; (b) if sent by email, on the day it is sent, if a business day, and otherwise, on the next following business day, unless the sending Party is notified that the email address is invalid; (c) if sent by facsimile, upon receipt by the sending Party of an error-free transmission report; or (d) if sent by overnight courier service, or mailed by certified or registered mail, return receipt requested, postage prepaid, upon receipt. Notices to Company must be sent to the address set forth on the first page of the Principal Terms. Notices to Smaato must be sent to:

Smaato, Inc.
Legal Department
240 Stockton St., 10th Floor
San Francisco, CA 94108
U.S.A.

Email: legal@smaato.com
Fax: +1 (650) 240-0708

Either Party may change its address for notices by providing at least fifteen (15) days' prior notice to the other Party in the manner set forth in this Section.

12.7. Cumulative Remedies. No rights or remedy herein conferred upon or reserved to either Party hereunder is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy under this Agreement, or under applicable law, whether now or hereafter existing.

12.8. Interpretation. Any headings contained in this Agreement are for convenience only and will not be employed in interpreting this Agreement. The Parties and their respective counsel have negotiated this Agreement. This Agreement will be interpreted fairly in accordance with its terms and conditions and without any strict construction in favor of or against either Party. This contract is written in English and, if it is translated into any other language, the English-language version shall control.

12.9. Further Assurances. The Parties hereby covenant and agree that, subsequent to the execution and delivery of this Agreement and without any additional consideration, the Parties shall promptly execute and deliver any further legal instruments and perform any acts, which are or may become necessary to effectuate the purposes of this Agreement.

12.10. Binding Effect. This Agreement and its rights, privileges, duties and obligations shall inure to the benefit of and be binding upon each of the Parties, together with their respective successors and permitted assigns.

12.11. Assignment. Neither Party shall assign this Agreement, in whole or in part, without the prior written consent of the other Party; provided, however, that either Party may assign this Agreement to an acquirer of all or substantially all of such Party's assets, stock or business (whether by sale, merger, reorganization, operation of law, or otherwise), without the other Party's prior written consent.

12.12. Relationship of the Parties. The Parties are independent contractors, and nothing contained in this Agreement will be deemed to create a joint venture, partnership, fiduciary or other similar relationship between the Parties. Nothing in this Agreement may be construed to give either Party the power to direct or control the day-to-day activities of the other Party and no Party will have any power to

create or assume any obligation on behalf of the other Party for any purpose whatsoever.

12.13. Entire Agreement. This Agreement represents the entire understanding and agreement between the Parties with respect to the subject matter hereof. This Agreement supersedes and terminates all previous and contemporaneous verbal or written negotiations, term sheets, agreements and understandings between the Parties with respect to such subject matter. This Agreement shall not be

valid until executed by a duly authorized representative of each Party.

12.14. Counterparts. This Agreement may be executed in counterparts, each of which when executed shall be deemed an original and all of which together shall constitute one and the same document. A facsimile or electronic copy of this Agreement, including its signature pages, will be deemed to be an original.

## SCHEDULE 1

### EDITORIAL AND CONTENT GUIDELINES

- Content or material promoting or containing links related to pornographic, adult sexual, obscene or that contain sexually explicit images or activity; or
- Content or materials promoting or containing links related to gambling, online casinos, tobacco, alcohol and/or weapons; or
- Content or materials promoting or containing links related to illegal activities including but not limited to illegal drugs, terrorism, criminal activities; or
- Content or materials promoting or containing links related with graphic or explicit violence or is discriminatory, hate, offensive, defamatory or profane; or
- Content or materials promoting or containing links that is disparaging to SMAATO or any of its Publishers or Ads vendors: or
- Content or materials promoting or containing links that are libelous, harassing, abusive, fraudulent, unlawful; or
- Content that has links or promotes activities that are understood or seen as Internet abuse including but not limited to, use of spyware, corrupted files viruses, or other materials that are intended to or damage or render inoperable software of hardware; or
- Content or materials promoting or containing links that violates or infringes upon any third party intellectual property rights or any other third party rights.

### MOBILE ADVERTISEMENT STYLE & GRAMMAR GUIDELINES

- Proper grammar conventions should be followed.
- Use of common text message abbreviations is permitted.

### MOBILE ADVERTISEMENT LINKS & PHONE NUMBERS GUIDELINES

- Advertiser's destination URL must be viewable in mobile web browsers.
- Advertiser's destination URL must link to a working mobile website written in a supported markup language (xhtml, wml, chtml, or html for PDAs).
- Advertiser may not link to an email address or a file (for example, an image, audio, video, or document file that requires an additional program or application to open or run).
- The landing page for Advertisement cannot be under construction.
- Advertiser's destination URL must link to an actual mobile web page with content relevant to the applicable Advertisement.
- Advertiser's destination URL must work properly.
- "Click-to-call" numbers must connect customers to advertiser's business.
- Phone numbers must be functional.
- Phone numbers may not connect customers to a fax number.
- Phone numbers must be local or domestic to the country advertiser's Advertisements are targeting.
- Telephone numbers must use the correct format for the target country.
- Toll or fee-based telephone numbers that require additional payment by the caller are not allowed.

## SCHEDULE 2

### PAYMENT INFORMATION

| BENEFICIARY | |
|---|---|
| Beneficiary Name: .............................. | Smaato Inc. |
| Beneficiary Address: ........................... | 240 Stockton Street, 10th Floor, San Francisco, CA 94108 |
| Tax-ID Number: ................................ | ~~[REDACTED]~~ |

| WIRE TRANSFER | |
|---|---|
| Beneficiary Bank Name: ...................... | Citibank NA |
| ABA Routing and transit #: ................ | ~~[REDACTED]~~ |
| Credit Account#: ............................... | ~~[REDACTED]~~ |
| SWIFT#: .......................................... | ~~[REDACTED]~~ |
| For Credit of: ................................... | Smaato Inc. |
| Bank Address ..................................... | 112 De Anza Blvd San Mateo, CA 94402, USA |

| CHECKS should be sent to: |
|---|
| Smaato Inc. |
| Attn: LBX# 4796 |
| 2525 Corporate Place |
| 2nd Floor - Suite 250 |
| Monterey Park, CA 91754 |

| PAYPAL (use the PayPal Mass Payment) |
|---|
| us.paypal@smaato.com |

# EXHIBIT 2

## AMENDMENT TO REAL-TIME BIDDING SERVICE AGREEMENT FOR MEDIA BUYERS

This Amendment to the Real-Time Bidding Service Agreement For Media Buyers (the "**Amendment**"), effective as of the date of last signature below (the "**Operative Date**"), by and between SITO Mobile Ltd. ("**Company**") and Smaato, Inc. ("**Smaato**"), and amends and supplements the Real-Time Bidding Service Agreement For Media Buyers dated March 1, 2014 by and between Company and Smaato ("**Agreement**"). Company and Smaato are each a "Party," and collectively are the "Parties" to the Agreement and this Amendment.

All capitalized terms used and not otherwise defined in this Amendment shall have the meanings ascribed to them in the Agreement. Except as expressly set forth herein, all terms and conditions set forth in the Agreement shall remain unchanged and in full force and effect. In the event of any inconsistency or conflict between this Amendment and the Agreement, this Amendment shall control.

In consideration of the mutual covenants contained in the Agreement and in this Amendment, the Parties agree as follows:

**1. 1.** Sections E. Payment Terms of PRINCIPAL TERMS of the Agreement is hereby deleted in the entirety and replaced by the new wording for Section E. Payment Terms as set forth below.

Sections E. Payment Terms: After the end of each calendar month, Smaato will send an invoice for the Total Media Costs via email to Company. Payment is due within sixty (60) calendar days from the end of the month for which the invoice is issued ("Due Date"). Any dispute concerning the amount of any invoice must be raised immediately but not later than thirty (30) days of the end of the month for which the amounts were accrued. Payment shall exclusively be denominated in U.S. Dollars and paid via PayPal or wire transfer to an account to be designated by Smaato or by other means as communicated by Smaato. The payment information is to be found in Schedule 1 of the Agreement. The Total Media Costs will be rounded to the nearest cent. Fees will be calculated solely based on records maintained by Smaato.

**2.** Miscellaneous. This Amendment and the rights, obligations and licenses herein, shall be binding upon, and inure to the benefit of, the Parties hereto and their respective heirs, successors, assigns, and personal representatives. Neither Party shall assign this Amendment or the Agreement in whole or part without the prior written consent of the other Party except that either Party may assign the Agreement and this Amendment in connection with a merger, reorganization, or sale of a substantial part of the assets or business to which the Agreement and this Amendment relates. This Amendment contains the entire understanding of the Parties regarding its subject matter and supersedes all other agreements and understandings, whether oral or written; provided, however, that it shall be read in conjunction with the Agreement. No changes or modifications or waivers are to be made to this Amendment unless evidenced in writing and signed for by the representative authorities of both Parties. If any portion of this Amendment is held to be illegal or unenforceable, that portion shall be restated, eliminated, or limited to the minimum extent necessary so that this Amendment shall reflect as nearly as possible the original intention of the Parties, and the remainder of this Amendment shall remain in full force and effect. This Amendment shall be governed by, and construed in accordance with, the laws of the State of California without regard to the conflicts of laws provisions thereof. Each Party hereby submits to the exclusive jurisdiction of the state and federal courts

DocuSign Envelope ID: 6172566E-1F1C-4134-A46B-B18D15FE3F6A

in San Francisco County, California for purposes of all legal proceedings arising out of or relating to this Amendment and the subject matter hereof.

The Parties have caused this Amendment to be executed by their duly authorized representatives as of the Operative Date.

**COMPANY**

By: _____

Name: _KUNT STREAMS_____

Title: _CFO_____

**SMAATO, Inc.**

By: _____
      Ragnar Kruse
      A11B66BCDAB748A...

Name: _Ragnar Kruse_____

Title: _CEO_____

        September 8, 2016

# EXHIBIT 3



**REBATE AGREEMENT**

This Rebate Agreement ("**Rebate Agreement**"), dated December 18, 2018 ("**Effective Date**"), by and between SITO Mobile Ltd. ("**Company**") and Smaato, Inc. ("**Smaato**"), supplements the DSP Mobile Advertising Partnership Agreement dated March 1, 2014 by and between Company and Smaato ("**Agreement**"). Company and Smaato are each a "**Party**" and collectively are the "**Parties**" to the Agreement and this Rebate Agreement.

All capitalized terms used and not otherwise defined in this Rebate Agreement shall have the meanings ascribed to them in the Agreement. Except as expressly set forth herein, all terms and conditions set forth in the Agreement shall remain unchanged and in full force and effect. In the event of any inconsistency or conflict between this Rebate Agreement and the Agreement, this Rebate Agreement shall control.

In consideration of the mutual covenants contained in the Agreement and in this Rebate Agreement, the Parties agree as follows:

**1. Definitions.**

"**Rebate Percent**" means the percentage of Total Net Media Purchase Company is qualified to receive from Smaato based on the Rebate Tier achieved by Company.

"**Rebate Amount**" means the US Dollar amount Company is qualified to receive from Smaato based on the Rebate Tier achieved by Company, determined by multiplying the corresponding Rebate Percent by the actual Total Net Media Purchase made during the Rebate Term.

"**Total Net Media Purchase**" means the gross purchase of Ad Inventory by Company, for any campaign accepted by Smaato, less any applied bulk discount, agency discount, special discounts, technology costs, and applicable taxes, and less any cancelled media purchases.

**2. Rebate Structure**

| Rebate Tier | Total Net Media Purchase During the Rebate Term (USD) | Rebate Percent |
|:---:|:---:|:---:|
| 1 | ≥$760,000 | 2% |
| 2 | ≥$900,000 | 4% |

Upon Company reaching the specific Rebate Tier for its Total Net Media Purchase in the Rebate Term, Smaato shall rebate to Company the corresponding Rebate Amount (as defined above). Notwithstanding the foregoing, Rebate Amount shall be based only on the invoices for the Rebate Term paid by Company before the applicable invoice Due Date.

**3. Rebate Term.** The Rebate Term shall commence on 1/1/2019 and terminate on 3/31/2019.

**4. Payment Terms.** The total Rebate Amount shall be payable within sixty (60) days from the end of the Rebate Term. Rebate Amount will be calculated solely based on records maintained by Smaato. Smaato shall have the right to withhold such Rebate Amount until Company has fulfilled all of its outstanding payment obligations incurred prior to and during the Rebate Term to Smaato. Company shall not be entitled to deduct or offset any Rebate Amount from any invoice(s) owing and due to Smaato.



**5. Miscellaneous.** This Rebate Agreement and the rights, obligations, and licenses herein shall be binding upon, and inure to the benefit of, the Parties hereto and their respective heirs, successors, assigns, and personal representatives. Neither Party shall assign this Rebate Agreement or the Agreement in whole or part without the prior written consent of the other Party except that either Party may assign the Agreement and this Rebate Agreement in connection with a merger, reorganization, or sale of a substantial part of the assets or business to which the Agreement and this Rebate Agreement relates. This Rebate Agreement, read in conjunction with the Agreement, contains the entire understanding of the Parties regarding its subject matter and supersedes all other agreements and understandings, whether oral or written. No changes, modifications, or waivers are to be made to this Rebate Agreement unless evidenced in writing and signed for by the representative authorities of both Parties. If any portion of this Rebate Agreement is held to be illegal or unenforceable, that portion shall be restated, eliminated, or limited to the minimum extent necessary so that this Rebate Agreement shall reflect as nearly as possible the original intention of the Parties, and the remainder of this Rebate Agreement shall remain in full force and effect. This Rebate Agreement shall be governed by, and construed in accordance with, the laws of the State of California without regard to the conflict of laws provisions thereof. Each Party hereby submits to the exclusive jurisdiction of the state and federal courts in San Francisco County, California for purposes of all legal proceedings arising out of or relating to this Rebate Agreement and the subject matter hereof.

IN WITNESS WHEREOF, the Parties have caused this Rebate Agreement to be executed by their duly authorized representatives as of the Effective Date.

| Smaato, Inc. | Company: |
|---|---|
| Signature: *Glenn Fishback* <br> ─DocuSigned by:─ <br> ─83417549307149D... | Signature: |
| Name: Glenn Fishback | Name: *Kyoflo Pogrebenko* |
| Title: CRO | Title: *Director, Data & Analytics* |
| Date: January 4, 2019 | Date: *1/2/2019* |

─DocuSigned by:─
*Georg Fiegen*
─6AC180BDC028454...
Georg Fiegen

COO

Januar 4, 2019

# EXHIBIT 4



**Smaato, Inc.**
240 Stockton Street, 10th Floor
San Francisco, CA 94108
Phone +1 (650) 286-1198
Fax +1 (650) 240-0708
accounting@smaato.com

SITO Mobile, Ltd.
100 Town Square, Suite 204
Jersey City NJ 07310
United States

# STATEMENT

Date: 8/30/19
Currency: USD
**Payment Terms: Net 60**

| Date | Doc. No. | Description | Amount | Payments | Balance |
|------|----------|-------------|--------|----------|---------|
| 1/31/19 | Invoice #61520 | DSP Ad-Delivery by Smaato | $158,016.36 | $79,008.18 | $79,008.18 |
| 2/28/19 | Invoice #61755 | DSP Ad-Delivery by Smaato | $131,685.56 | | $210,693.74 |
| 3/31/19 | Invoice #61977 | DSP Ad-Delivery by Smaato | $196,336.70 | | $407,030.44 |
| 4/30/19 | Invoice #62198 | DSP Ad-Delivery by Smaato | $154,348.70 | | $561,379.14 |
| 5/31/19 | Invoice #62426 | DSP Ad-Delivery by Smaato | $237,405.61 | | $798,784.75 |

| Current | 1-30 Days | 31-60 Days | 61-90 Days | Over 90 Days | Total Balance |
|---------|-----------|------------|------------|--------------|---------------|
| $0.00 | $0.00 | $237,405.61 | $154,348.70 | $407,030.44 | $798,784.75 |

# WIRE INSTRUCTIONS

**BENEFICIARY:**
Beneficiary Name : Smaato, Inc.
Beneficiary Address : 240 Stockton Street, 10th Floor
San Francisco, CA 94108
Tax-ID Number :

**WIRE TRANSFER:**
Beneficiary Bank : East West Bank
ABA Routing and Transit
Credit Account #
SWIFT #
For Credit of : Smaato, Inc.
Bank Address : 9300 Flair Drive, 4th Fl.
El Monte, CA 91731, USA

**PAYPAL:**
us.paypal@smaato.com

* Please note to avoid extra fees MASS PAYMENT recommended!

**CHECK:**
Smaato, Inc.
240 Stockton Street, 10th Floor
San Francisco, CA 94108



Smaato Inc.
240 Stockton Street, 10th Floor
San Francisco, CA 94108
Phone +1 (650) 286-1198
Fax +1 (650) 240-0708
accounting@smaato.com

## INVOICE

BILL TO:
SITO Mobile, Ltd.
100 Town Square, Suite 204
Jersey City NJ 07310
United States

**Invoice #61520**

Date of Invoice: 1/31/2019
Due Date: 4/1/2019

## Payment Terms: Net 60

| # | DESCRIPTION | PERIOD | TOTAL |
|---|---|---|---|
| 01 | DSP Ad-Delivery by Smaato SPX Platform | Jan 2019 | $158,016.36 |
| | | SUBTOTAL | $158,016.36 |
| | | OTHER | $0.00 |

INVOICE TOTAL $158,016.36

NOTICE:
The total amount will be due in Net 60 days at 4/1/2019. Please always reference the invoice number together with your payment.

## Thank you for your business!

## WIRE INSTRUCTIONS

**BENEFICIARY:**
Beneficiary Name : Smaato Inc.
Beneficiary Address : 240 Stockton Street, 10th Floor
San Francisco, CA 94108
Tax-ID Number :

**WIRE TRANSFER:**
Beneficiary Bank : Bridge Bank, N.A.
ABA Routing and Transit # :
Credit Account # :
SWIFT # :
For Credit of : Smaato Inc.
Bank Address : 55 Almaden Boulevard
San Jose, CA 95113, USA

**PAYPAL:**
us.paypal@smaato.com

* Please note to avoid extra fees MASS PAYMENT recommended!

**CHECK - LOCKBOX:**
Smaato Inc.
PO Box 740727
Los Angeles, CA 90074-0727



INVOICE

**Smaato Inc.**
240 Stockton Street, 10th Floor
San Francisco, CA 94108
Phone +1 (650) 286-1198
Fax +1 (650) 240-0708
accounting@smaato.com

BILL TO:
SITO Mobile, Ltd.
100 Town Square, Suite 204
Jersey City NJ 07310
United States

**Invoice #61755**

Date of Invoice: 2/28/2019
Due Date: 4/29/2019

**Payment Terms: Net 60**



| # | DESCRIPTION | PERIOD | TOTAL |
|---|---|---|---|
| 01 | DSP Ad-Delivery by Smaato SPX Platform | Feb 2019 | $131,685.56 |
| | | SUBTOTAL | $131,685.56 |
| | | OTHER | $0.00 |

**INVOICE TOTAL  $131,685.56**

NOTICE:
The total amount will be due in Net 60 days at 4/29/2019. Please always reference the invoice number together with your payment.

Thank you for your business!

## WIRE INSTRUCTIONS



**BENEFICIARY:**
Beneficiary Name : **Smaato Inc.**
Beneficiary Address : **240 Stockton Street, 10th Floor**
**San Francisco, CA 94108**
Tax-ID Number :

**WIRE TRANSFER:**
Beneficiary Bank : **Bridge Bank, N.A.**
ABA Routing and Transit # :
Credit Account # :
SWIFT # :
For Credit of : **Smaato Inc.**
Bank Address : **55 Almaden Boulevard**
**San Jose, CA 95113, USA**

**PAYPAL:**
us.paypal@smaato.com

* Please note to avoid extra fees MASS PAYMENT recommended!

**CHECK - LOCKBOX:**
**Smaato Inc.**
**PO Box 740727**
**Los Angeles, CA 90074-0727**



**Smaato Inc.**
240 Stockton Street, 10th Floor
San Francisco, CA 94108
Phone +1 (650) 286-1198
Fax +1 (650) 240-0708
accounting@smaato.com

# INVOICE

BILL TO:
SITO Mobile, Ltd.
100 Town Square, Suite 204
Jersey City NJ 07310
United States

**Invoice #61977**

Date of Invoice: 3/31/2019
Due Date: 5/30/2019

## Payment Terms: Net 60

| # | DESCRIPTION | PERIOD | TOTAL |
|---|---|---|---|
| 01 | DSP Ad-Delivery by Smaato SPX Platform | Mar 2019 | $196,336.70 |
| | | SUBTOTAL | $196,336.70 |
| | | OTHER | $0.00 |

INVOICE TOTAL **$196,336.70**

NOTICE:
The total amount will be due in Net 60 days at 5/30/2019. Please always reference the invoice number together with your payment.

## Thank you for your business!

# WIRE INSTRUCTIONS

**BENEFICIARY:**
Beneficiary Name : **Smaato Inc.**
Beneficiary Address : **240 Stockton Street, 10th Floor**
**San Francisco, CA 94108**
Tax-ID Number :

**WIRE TRANSFER:**
Beneficiary Bank : **Bridge Bank, N.A.**
ABA Routing and Transit # :
Credit Account # :
SWIFT # :
For Credit of : **Smaato Inc.**
Bank Address : **55 Almaden Boulevard**
**San Jose, CA 95113, USA**

**PAYPAL:**
us.paypal@smaato.com

\* Please note to avoid extra fees MASS PAYMENT recommended!

**CHECK - LOCKBOX:**
**Smaato Inc.**
**PO Box 740727**
**Los Angeles, CA 90074-0727**



**Smaato Inc.**
240 Stockton Street, 10th Floor
San Francisco, CA 94108
Phone +1 (650) 286-1198
Fax +1 (650) 240-0708
accounting@smaato.com

INVOICE

BILL TO:
SITO Mobile, Ltd.
100 Town Square, Suite 204
Jersey City NJ 07310
United States

**Invoice #62198**

Date of Invoice: 4/30/2019
Due Date: 6/29/2019

## Payment Terms: Net 60

Please note that Smaato Inc. has new remittance instructions!



| # | DESCRIPTION | PERIOD | TOTAL |
|---|-------------|--------|-------|
| 01 | DSP Ad-Delivery by Smaato SPX Platform | Apr 2019 | $154,348.70 |
| | | SUBTOTAL | $154,348.70 |
| | | OTHER | $0.00 |

INVOICE TOTAL $154,348.70

NOTICE:
The total amount will be due in Net 60 days at 6/29/2019. Please always reference the invoice number together with your payment.

## Thank you for your business!

## WIRE INSTRUCTIONS

**BENEFICIARY:**
Beneficiary Name : **Smaato, Inc.**
Beneficiary Address : **240 Stockton Street, 10th Floor**
**San Francisco, CA 94108**
Tax-ID Number :

**WIRE TRANSFER:**
Beneficiary Bank : **East West Bank**
ABA Routing and Transit # :
Credit Account # :
SWIFT # :
For Credit of : **Smaato, Inc.**
Bank Address : **9300 Flair Drive, 4th FL**
**El Monte, CA 91731**

**PAYPAL:**
us.paypal@smaato.com

* Please note to avoid extra fees MASS PAYMENT recommended!

**CHECK:**
**Smaato Inc.**
**240 Stockton Street, 10th Floor**
**San Francisco, CA 94108**



## INVOICE

**Smaato Inc.**
240 Stockton Street, 10th Floor
San Francisco, CA 94108
Phone +1 (650) 286-1198
Fax +1 (650) 240-0708
accounting@smaato.com

BILL TO:
SITO Mobile, Ltd.
100 Town Square, Suite 204
Jersey City NJ 07310
United States

**Invoice #62426**

Date of Invoice: 5/31/2019
Due Date: 7/30/2019

## Payment Terms: Net 60

Please note that Smaato Inc. has new remittance instructions!



| # | DESCRIPTION | PERIOD | TOTAL |
|---|---|---|---|
| 01 | DSP Ad-Delivery by Smaato SPX Platform | May 2019 | $237,405.61 |
| | | SUBTOTAL | $237,405.61 |
| | | OTHER | $0.00 |

**INVOICE TOTAL   $237,405.61**

NOTICE:
The total amount will be due in Net 60 days at 7/30/2019. Please always reference the invoice number together with your payment.

## Thank you for your business!

## WIRE INSTRUCTIONS



www.smaato.com